State Farm v. Rosenthal State Farm v. Automobile Insurance Company Where does the statute of limitations on an underinsured motorist claim begin to run? There, unfortunately, seems to be no Pennsylvania appellate court decision that squarely addresses that issue. But, fortunately, there are a series of decisions from Pennsylvania's intermediate appellate court, the Pennsylvania Superior Court, that do give us some guidance. It is our position in this case that the district court failed to follow the roadmap that had been laid out by the Pennsylvania Superior Court. And in ignoring the Superior Court's rulings, the district court simply erred in declining to grant the relief that State Farm sought in its declaratory judgment complaint. It is not disputed, either by the district court or among the parties, that the statute of limitations applicable to claims for underinsured motorist benefits is the same statute of limitations that applies to uninsured motorist benefits, namely a period of four years. Although the rule may be different in other jurisdictions, it is also not disputed that under Pennsylvania law, a plaintiff can seek and recover underinsured motorist benefits before the plaintiff's third-party case against the adverse driver has been concluded or resolved in any fashion. Those two principles will become very important as we move through the analysis. I say that again. The uninsured motorist claim can be recovered before the underlying damage claim is resolved? That is correct. How would you know how much underinsured coverage to provide if the underlying claim has not been resolved yet? The Pennsylvania Superior Court, I suppose, has given us... In fact, the settlement could be below the policy limits. And often is. And yet, the Pennsylvania Superior Court has said that that doesn't matter. But you could resolve the uninsured motorist claim? Uninsured motorist, not underinsured. Underinsured. Uninsured is going to be something separate because there we will not have necessarily even a third-party proceeding. How would you know what to pay on underinsurance if the underlying claim is not resolved yet? I'm sorry, I missed the beginning of your question. How would you know how much underinsurance should be paid if the underlying insured claim has not been resolved? The Pennsylvania Superior Court effectively has said that the plaintiff's burden of proof in the underinsured proceeding is the same burden of proof that the plaintiff would have in the third-party litigation. Namely, in proceeding for underinsured motorist benefits, the plaintiff must establish that the adverse driver was negligent. The plaintiff must establish that the other driver's negligence was a cause of some harm. And thirdly, the plaintiff must establish the amount of damages that were sustained as a result of the accident. Once those three elements have been met and a determination has been made, it is then simply a matter of calculating what the net award will be. And that is done simply by deducting from the damages the amount of liability coverage that was available to the adverse driver. It is a credit that endures to the benefit of the UIM carrier. It is what the Trial Lawyers Association, in their amicus brief, describes to this court as being the Boyle credit. So you're suggesting that when a person has an accident like this, he should file suit against the other driver plus against his own carrier? Only if necessary. He certainly is permitted to do both things under Pennsylvania law. So that's what you're encouraging. That's the way you do it. As soon as you have the accident, within a reasonable time, you come out and sue your own insurance carrier plus the other driver. With the understanding that a reasonable time is the time that has been established by the Pennsylvania legislature. And that is two years in which to file that lawsuit against the adverse driver and an additional two years or a total of four before it is necessary to bring an action against the UIM carrier. Now, is that something we really want to encourage? To encourage people to file suit against their own carrier? I know you said you would have theoretically four years, but most good lawyers aren't going to let this thing go to the last day. Is that really something that we should encourage? Your Honor, I don't know that we are necessarily encouraging the filing of any lawsuits. All we are simply saying is that there does come a point in time when if there has been no resolution of the claim, action must be taken within the judicial system. How about some of the other starting dates we could arrive at? I mean, we certainly don't have anything that's binding on us from the Pennsylvania Supreme Court. We have some Superior Court cases. How about the date you know the other driver is not properly insured? In other words, the date you know or should know that there's not going to be enough money there to cover you. How about starting at that time instead? What would be the pitfalls of that? Your Honor, I believe there are several pitfalls with that. First of all, I don't know when we ever truly know that the other driver is underinsured. Again, there are three elements that must be proven. The negligence of that driver, the causal link between the negligence and harm, and the value of the harm. The value of the harm is not something that is a factual certainty. It is something that may vary from one decision-maker to another. And so consequently, we can't say on day one or on day two, I now know the value of my case is X and I know that X is more than the adverse driver's policy limits. Your summary damages are often not liquidated, is that what you're saying? That's absolutely correct, Your Honor. How about the date you saw the adverse driver? How about if we started at that? What would the pitfalls of that be? I have to concede that there is some appeal to using that date. And in fact, that's what the district court established as the rule dating back to 1990 in the Wheeler case. But at the time that Wheeler was decided, it was believed and understood that the UIM claim could not proceed until the third-party litigation had resolved in some fashion. What we have come to learn from the Pennsylvania Superior Court since that time is that that is simply not Pennsylvania law. The Pennsylvania Superior Court in the Harper case and in the Krakauer case has made it absolutely clear that a policyholder is entitled not only to claim but also to recover UIM benefits before and, frankly, without ever successfully resolving the third-party litigation. The only requirement is simply that the UIM carrier be given what is described as the Boyle credit. Those cases don't say that you must do it then, but you can do it, right? That is absolutely correct, Your Honor. I cannot argue with that. But it is equally true under Pennsylvania law that the right to bring an action comes concurrently with the starting of the statute of limitations. It would not make sense to separate those two. If the plaintiff has the right to bring the action, then it goes hand in hand with the clock beginning to tick. And that's at the date of the accident? Following from Krakauer and Harper, yes, that is the date of the accident. And, frankly, the amicus, the trial lawyers' association in this case, concedes that point. And I would refer the Court to page 11 of the amicus brief. Are those uninsured motorist cases? The amicus concedes it in the context of the UIM or underinsured case. But the amicus says in its brief, according to the letter of the law as set forth in these two opinions, referring to Krakauer and Harper, State Farm is correct. Technically, an insured would be permitted to file a claim for UIM benefits on the date of an accident. And that is absolutely a correct statement of Pennsylvania law following from Krakauer and Harper. And it is because of that that the statute of limitations must, therefore, begin to run on the date of that same accident. Aren't the cases that support the date of the accident as the starting point uninsured motorist cases? Some of them are. Some of them are also underinsured motorist cases. We cite two of them, at least, in our brief, one from the Supreme Court of New Jersey and the other, I believe, is from the highest court in Florida. Of course, it makes sense in the uninsured motorist case because you know that the other driver doesn't have insurance, and you probably know that right at or about the moment of the accident. But underinsured is something that you really don't know until you get further down the road. But nevertheless, we still need an absolute deadline because the carriers, the defendants in these cases, do have some repose interest. Well, you could have deadlines, as Judge Van Interven mentioned a moment ago. How about the moment of settlement? Or the moment of rejection of the underinsured motorist payment by the carrier? The difficulty, again, Your Honor, is that that simply doesn't follow from where the Pennsylvania cases have begun to take us. Yeah, but what would the practical pitfalls of that be? Stale claims or what? Well, certainly stale claims is one of the practical pitfalls. In other words, if we have to wait until the claim is actually made, the claim may not be made to the carrier until years and years after the accident has occurred. There is an inherent prejudice that follows from that. Could I just ask, based upon your... I have the greatest respect for all the lawyers in arguing this very difficult matter. Would it do us any good to try to certify this issue to the Pennsylvania Supreme Court? Do you think we'd get anywhere with that? I would like to think the answer... That's an unfair question, tell me, but I'm just thinking out loud. I don't think it's an unfair question. I do think, ultimately, it is an issue that the Pennsylvania Supreme Court needs to take under consideration. If this is the best mechanism for getting it before that court, then I certainly endorse it. I understand, and I would appreciate it if the other lawyers in this case would give us their proud views on that matter, too. You may proceed, sir. Thank you, Your Honor. I think it is important to come back to the decision by the Pennsylvania Superior Court in 1985 in Boyle v. State Farm. That was a statute of limitations case, albeit in the uninsured motorist context. What the Superior Court told us in that case is that under Pennsylvania law, the statute of limitations begins to run when the right to present the claim vests. Now, for whatever reason, the district court in this case, as well as the district court in Motorist Mutual v. Durney, upon which our district court relied heavily, both of them very expressly said, we're not going to use that standard. Why does the statute begin when the right to file a claim vests, as opposed to this being a contract action when the contract is breached? The difficulty, again, is several-fold, Your Honor. First of all, I don't know that we can necessarily pinpoint a time when an underinsured motorist contract is breached. Well, we refuse to pay. But how much do we owe? This is not a typical sales contract where I can say, on March 17th, I will deliver one unit of this product at X price. When this accident happens, we don't know on that date necessarily how much is owed. We don't know if anything is owed. So it's simply the refusal to pay a breach of the contract. We may not owe anything, and therefore the refusal to pay may not be in violation of the contract. Isn't that the purpose of arbitration? It could be. But doesn't that also then seem to prove the point that the statute of limitations must have begun to run before we've gotten to arbitration, before the request for arbitration is made, because it necessarily means there is already a dispute.  Thank you very much. We'll get you back on rebuttal. Mr. Hunter? Yes. Good morning, Your Honor. Your Honor, I would like to yield five minutes of my time to Mr. Cooper for amicus. That's fine. May it please the Court. This is a contract action. That's what we're really talking about here. Counsel in his brief continually relies upon uninsured motorist cases. Very different than an underinsured case. As Judge Fuentes pointed out, and I believe Judge Seiler, in an uninsured motorist case it's easy to determine if the other driver was uninsured. Most of these cases it's a phantom vehicle where you find out at the scene they don't have insurance information. In an underinsured context, it takes a heck of a lot more effort to determine what kind of insurance the tortfeasor actually has. In the case of Barr, the facts... But you're entitled to know now, don't you? The rule used to be you had to make a demand or something before you found out the policy limits. Is that still the rule? No, sir. It's my understanding, at least in my experience, if the carrier doesn't want to amicably tell you what the limits are, you must file suit and then go into discovery to get the limits. Okay. Policy limits are not... They're kept almost like a national secret at times with some carriers. And that's really one of the difficulties that was presented in this case. There were two accidents, one in March of 1998 and one in June of 1998. So you had both these matters proceeding, and counsel would have us file suit on the day of the accident for underinsured motorists. He said, why not do that? Obviously, the reason you don't do that is it... You might not be proceeding in good faith. Absolutely. You know, we're attorneys. We are officers of the court. Should we just file a little suit just because a client walks in our office or because we can? I don't think that's what any of these cases say. The Krakauer case, which counsel refers to about being able to, if you want, to file an underinsured claim prior to the third-party claim being resolved, says just that. You can. It doesn't say you must. And the Pennsylvania Superior Court had the opportunity, if they wish, to say, all right, in underinsured motorist cases, you must file within one year of the day of the accident, four years, whatever. But they didn't. The Pennsylvania Supreme Court only said that you can file a UIM claim while the third-party claim is going. And that's a tactable reason. In this case, it took a very long time to develop what the actual damages were also because of the overlapping of two cases. State Farm all along knew what was going on in this case. They were aware because of the March and the June cases overlap. They were getting information all along. There was no prejudice whatsoever. As the lower court pointed out, in a contract action, the statute of limitations runs when there's a breach. It's contract. The breach here was very clear when they refused to arbitrate. The counsel wants to know, well, how much are we supposed to pay? That's up to an arbitration panel. Let's go to the arbitration panel and see. But we also have to know what happened in the third-party case. So you're saying you wait until you settle with the adverse driver, and at that point you would start a remedy? Yes, Your Honor. I think that's the more orderly way to do it so that there aren't actions filed in bad faith, especially when you have two overlapping actions with very serious injuries, and you're trying to sort out what damages are in the March case, what damages are in the June case, how do you put them together. It becomes a very tedious proposition. And to just file a UIM claim without developing these other facts, I think, is bad faith on the part of counsel. It's right about that time that the claimant has an idea or knows that he or she has an underinsured claim. But there's another date, an alternate date, which is way, in this case, certainly Mr. Rosenthal knew that he had an underinsured claim in 1999. In fact, he was told he had a $2 million loss calculation. Now, why isn't that date reasonably the kickoff or the trigger for the statute? Your Honor, because right after that report, another report came out and quantified the damages as $1 million for both those accidents. But that still would take him over the policy in this case? Well, if, in fact, you could prove all that and show liability and show causation, we'd have to show all of those. But he knew he had a claim. We had a claim. Rosenthal knew he had a claim for underinsured motorists back in 1999. I don't think necessarily we knew there was a claim at that time, Your Honor, because we still had all these underlying propositions we had to prove. We still had to find out what the tortfeasor's policy was. That still wasn't known. We were on a lawsuit at that point. If the tortfeasor had a policy limit of $1 million or had more than one policy, then we don't have a UIM claim. Those things had to be worked out, and that's why I think Judge Kaufman says that there's got to be a trigger mechanism here. And clearly, according to him, it was the breach by State Farm not agreeing to arbitrate. I think my time is up, and I yield to you. May I just ask one question? Yes, sir. Again, would it do us any good, do you think, to try to certify this matter to the Pennsylvania Supreme Court? Your Honor, there have been some lower court cases on this issue in which they basically back wheelers. I honestly don't think the Supreme Court is going to take it. Yeah, I don't think they would. Maybe Mr. Cooper might have a better idea on that. All right. Thank you, sir. Thank you. Mr. Cooper, do you have an insight into the Pennsylvania Supreme Court, Mr. Cooper? I wish I did all the time. May it please the Court, Scott Cooper for the Amicus Pennsylvania Trial Lawyers Association. First, to address the issue with regards to certifying the issue, I think if the issue was phrased for the court, they possibly would consider accepting the case. However, considering the current makeup of the court, that's still one justice short, I think because Justice Newman had retired last year, and there's still the nomination of Judge Fitzpatrick, but he hasn't been confirmed yet. There may be a delay, or they may not want to take on an additional case at this point, which, as Judge Fuentes mentioned, about more work. That's exactly what this would actually lead to for the courts if you adopt State Farm's position. What would happen if you adopt the, and I'll try to go over this in five minutes, it would lead to almost like the Wild West, like it's been pointed out. Everyone would have to go in four years from the date of the accident and file lawsuits on underinsured motorist coverage to prevent you from committing legal malpractice. Whether you knew you had that many damages or not. Whether you knew or not. And the problem you have in a lot of the cases that's been recognized is the third-party carriers aren't required to give you the information. They cite either HIPAA or some other law and say confidentiality, and they don't necessarily always tell you. Now, there's certain companies like Safe Auto or American Independent that if I see someone hits my client as insured by them, you may have an idea that they insured for less, but they will not tell you all the time. The problem you run into then is there's sometimes multiple levels of underinsured motorist coverage that you may have to exhaust or go through, and then you may have in some cases two or maybe even three different carriers involved. You may have the first level, the car you're in, then two other additional levels. So then what I have to do is within four years, I don't even know what my claim is or the total value of the claim or the other person's insurance policy. Well, you'll know within four years, but you have to go file suit. Most of these cases would be brought in federal court because they're involving out-of-state insurance companies with Pennsylvania citizens. Most of the cases would be over $75,000, so you'd have diversity. Then you'd have three cases. You'd have a Rule 11 possible violation because you don't know whether the true value of your case is, but you know that there's this rule that says you have to file within four years. The more fundamental rule and fair rule is within four years of when this contract has been breached because that's the actual claim that you have. Is that going to lead to stale claims? Excuse me? Is that going to lead to stale claims? In other words, this thing being protracted well beyond the time, you know, the usual reasons for bringing litigation within a short period of time, witnesses, memories, and so forth. If we wait until there's a rejection of the underinsured claim, isn't that going to delay things too much? Well, Judge Van Turpen, I really don't think so because when you're looking at these claims, the companies usually already know right up front because their first-party benefits more often than not are paid for by the same company, like State Farm insured Mr. Rosenthal. So they already know there's a claim. Also, the insurance companies, when they're in this case, Mr. Rosenthal put the company on notice in 2003. They consented to settle on waived subrogation rights and never even said anything about the statute of limitations at that time. They can, at that time even, they actually control when the breach of contract occurs because there's several instances or circumstances that they can do. As I think Judge Fuentes mentioned a little bit ago, they can deny the claim altogether. State Farm has a policy a lot of times when there's an offer of making an undisputed payment. Like if I demand $100,000 and they think the case is worth $20,000, they will make an undisputed payment or an advance payment of $20,000 to the insurer. That, as far as I'm concerned, is a dispute. Or if they say, we're not going to pay at all, and then the other problem you could potentially run into is a lot of these claims deal with declaratory judgment actions where there's an issue over coverage and there's an issue over value. Then you have to, and a lot of times I say to the companies, well, if we agree, can we agree on damages? They say, well, we're not going to agree on anything. That's after we decide the declaratory judgment action. It's a breach of contract. The case really, even though you're right to bring the claim as arisen, as was noted by the Superior Court, you don't have to bring it. There's a case, the Nevada Supreme Court in Grayson, and it's not in the briefs, I found it last night. It's 971 Pacific 2nd at 799. Specifically talks about, in four paragraphs, and I don't want to read the whole thing, but about the unfairness and illogical of beginning the statute of limitations before there's even been a justiciable claim for a breach of contract. In this situation, there was a demand in 2004 at that time. State Farm could have said right then and there, well, we've been taking these records, we're not paying anything, go file a suit. But then instead they chose to go sue their insured a year later on the statute of limitations. There's more to this across a whole spectrum. In addition, and I'll just sum up, the recent IFP versus Kogan Supreme Court decision, which doesn't even require uninsured or underinsured motorist coverage to be in policies, then leads you to a situation where you may have some companies, if you have to file, like in Wheeler, in Wheeler they'd actually filed suit a year before they filed their petition to appoint an arbitrator. Nationwide came in and said, well, no, you have to appoint an arbitrator. So you feel the problem with picking the date you settle with the adverse driver or drivers. The problem with that is you're not going to know anything about what the coverage is. Well, you're going to know what the third party coverage is, obviously, because you settled with the third party. But you're not going to know, and for instance, in Nationwide versus Schneider, which the State Supreme Court just took, it was an en banc decision, I was amicus on that, where the State Superior Court held you don't have to exhaust fully the first level of underinsured motorist before you take the second level. Well, now this leads into another issue of, well, if they take that and reverse it, if you have to exhaust the first level, now you're going to have to file against the second level and the third level, and there's going to actually be stale, not stale claims, but just pending claims clogging up the court system, which may never even have to be brought, when it would make more, you know, logically to say, hey, if the company doesn't want to pay, that's your statute. If they make an offer and you reject it, that's when it starts. And in this case, in Indurney, what happens is the insured gets, the attorney, you know, you get these letters, send us records, send us records. You don't want to go in and file suit if you don't have to. But in the interest of moving cases expeditiously, what's wrong with requiring that an underinsured claim be filed at the moment of settlement? You have a pretty good idea of the policies that are out there. You probably have a very good idea of what your claim is worth. What's wrong with using either that date or the date of the jury verdict, as opposed to the breach date? The only potential problem is when you're dealing with because then you're back to the situation where now you have to go file something within four years of when you settle that, even though in some cases the company, you know, yes, insureds delay things or attorneys delay things, but the companies delay things too. It takes a while. And it certainly doesn't present the picture of this mass filing. Well, if you take the date of the accident and this Western shootout that you mentioned before, it's certainly far from that because you have a very good idea of what your claim is worth at that point. Correct, but if you pick the date of the accident, like State Farm wants you to do, that's where... I'm suggesting if we move away from that, why not the date of settlement or the date of verdict as opposed to the breach date? Your suggestion is that secondary policies have not been exhausted. Secondary policies and also then you get into a whole argument over what's the actual date of the settlement because I could see, I'd say it's a date you receive, you know, you sign the release or you get consent to settle in waiver of subrogation. There's that other issue. And if you look at it from in terms of the insured who's paid for this coverage and there's a breach, well, what are they suing on? They're suing on the breach and the policy says if we and the insured are at a disagreement, then you have the right to bring the court. Under the policies, is there a provision where you're required to notify the insurance company that you may be applying for underinsured coverage? Most policies say you have to receive consent to settle in waiver of subrogation. Almost all of them have it in there. There's the nationwide versus, I think, layman decision. It's a superior court case which was heard by the Supreme Court and then they dismissed it as improvidently granted the appeal a few years ago which said that you don't necessarily, that you should but you don't have to notify the underinsured motorist carrier but they could still show prejudice by you not notifying them. There's a recent case and for the life of me, excuse me, I think it's someone versus the Estate of Brahim, B-R-A-H-E-E-M, and in that case it dealt with someone wanting to pursue an underinsured motorist case and they had also bought a third-party case and a dram shop case and they never notified the company and the superior court said, I think it's a Judge Klein decision, said, well, you still have to provide the coverage but they could show prejudice and this is how the company could show prejudice and also they still would have to give a credit up to the dram shop, the full value of the case. So there are protections to the company in some circumstances and in most cases they all do know that they're potentially on the hook for exposure. Okay, so we would ask for the court to be affirmed. Thank you, Mr. Cooper. Thank you very much. And Mr. Hunter and Mr. McGrath, thank you. I still have some time. How much did you reserve? I reserved four. Four? Okay. Just to address a couple of points, perhaps somewhat randomly, and I apologize for that up front. The Krakauer case. I think the court may need a little bit more background because the Krakauer case really becomes the linchpin to a lot of this. On the one hand, it does seem sensible to say that the statute of limitations in a UIM context should not begin to run until the third-party claim has resolved in some fashion. Let's come back to Krakauer. In Krakauer, the plaintiff went to the UIM carrier first and said, we want to arbitrate our UIM case now, before the third-party case has been resolved. The carrier resisted, said, no, it's too early. You haven't finished the third-party litigation yet. We don't know if you have a valid UIM claim. Nevertheless, the case did proceed to arbitration. There was an award for the policyholder. The plaintiff then pursued the third-party case against the adverse driver and lost. The jury found that the adverse driver was not at fault. The carrier that paid the UIM benefits then went back and said, see, you had no valid UIM claim. Give us our money back. The Pennsylvania Superior Court said, no, that's not how it works. Under Pennsylvania law, the policyholder has every right to pursue the UIM claim first. That's what Patla wanted over the objections of the insurance industry, and that's what Patla got, was the right to go UIM before the third-party case resolved. It is absolutely fascinating to me to sit here today and listen to my adversaries argue, we need more time, we need more time, we can't possibly do it UIM first and then third-party litigation. It's a crack-hour Supreme Court case. Superior Court. Superior Court. Unchallenged in the Supreme Court. I don't think they can have it both ways. Having successfully fought for the right to pursue the UIM claim immediately, it has to go hand-in-hand with the statute of limitations also beginning to run on that very same claim. It would be illogical to suggest differently. The arbitration clause does not exist in every policy. The Pennsylvania Supreme Court has said it is not a requirement, and in fact, that's the way the industry is going. Certainly State Farm has gone that direction. There is no longer an arbitration provision in the UIM provisions of the policy. That would determine it then, a direct claim? It would be a direct action, that's correct. And again, none of this forecloses the opportunity to settle cases. The same way that third-party claims are settled without the need for litigation, UIM claims can be settled without the need for litigation. The last point that I wanted to make, and again, I hear this from my adversaries in this matter, is about the need for more time to develop more evidence, to get a better handle on how much liability coverage might be available to the adverse driver. Again, we have to keep in mind that we're not talking about the same statute of limitations for the third-party claim and the UIM claim. Two years to bring third-party action. Assuming that that is what has happened, there is at least two years that that third-party claim is in litigation before there would be a necessity to file the UIM action. Four years. At least two of which are in litigation with the third-party carrier. More than ample time to learn all of the facts that may be necessary or deemed relevant by the plaintiff. It is not prejudicial to the plaintiffs to impose this outside deadline. The opposite is true. It is fundamentally fair to the insurance carriers to know that there is a date by which I can close my file. This claim is now time-barred. We need a bright-line rule. It follows from the existing Pennsylvania cases that that bright-line rule should be four years from the date of the accident. I ask that the district court's decision be reversed. Thank you. Mr. McGrath, thank you very much. Thank you all for very good arguments. We'll take the case under advisory. We will recess. Please rise. This court is adjourned until Friday, March 16, at 10.15.